IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE CORPORATION, et al., | No. C 06-02889 SI |
| Plaintiffs, | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| TEILHARD TECHNOLOGIES, et al, | |
| Defendants. | |

On September 29, 2006, the Court heard oral argument on defendants' motion to dismiss for lack of subject matter jurisdiction. Having carefully considered the papers submitted by the parties and arguments of counsel, the Court hereby DENIES defendants' motion.

**BACKGROUND**

On April 27, 2006, plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation (collectively, "Oracle") filed this patent action.  Oracle seeks a declaratory judgment that its products do not infringe U.S. Patent No. 6,195,662 ("the '662 patent"). The '662 patent is owned by defendant JuxtaComm Technologies, Inc., which has licensed it to its subsidiary, defendant Shopplex.com Corporation. Both JuxtaComm and Shopplex are Canadian corporations. Shopplex does business as Teilhard Technologies, which is also named as a defendant. The final named defendant, Secure Group, Inc., was formerly a Canadian corporation, but, according to defendant, no longer exists. In October 2005, while Secure Group, Inc. was still in existence, Teilhard purchased certain assets from it, including the trade name "Secure Group."

Oracle filed this action after receiving an April 10, 2006 letter from Ron Fewer, who did not

1 purport to have any official relationship with Teilhard Technologies. Fewer's letter stated that Oracle
2 was "one of several companies that [were] in violation of Teilhard's patent." Kennedy Decl., Exh. C.
3 It also stated that Teilhard's CEO, Ken Prather, would be meeting "with a major patent trademark law
4 firm out of Manhattan" to discuss litigation in the U.S. *Id.* Finally, the letter stated that "Mr. Prather
5 would welcome the opportunity to provide more information to Oracle with a view to exploring a
6 relationship with mutual benefit." *Id.* Included with the letter was a binder containing instructions
7 addressed to Fewer with information about Teilhard, a copy of business cards for executives of Teilhard,
8 a copy of the '662 patent, and an analysis of the basis for Teilhard's contention that Oracle's product
9 infringed the patent. *Id.* On April 20, 2006, ten days after Fewer sent the letter to Oracle, he sent an
10 email to Dan Cooperman, General Counsel for Oracle. Fewer's email stated that "I learned today that
11 legal action will begin in the U.S. on April 28th regarding patent infringement allegations against
12 Oracle, Microsoft, and SAP.*" Id.,* Exh. D. Fewer sent a final email to Roger Kennedy, Oracle's Chief
13 Patent Counsel, on April 26, 2006. That email again referred to the "Friday April 28th deadline" and
14 asked if Kennedy had a "timeline for contact with Teilhard." *Id.*, Exh. E.

15 This communication between Fewer and Oracle was not the first time Teilhard allegedly
16 communicated with Oracle about the '662 patent. In 2004-2005, Teilhard and Oracle attempted to
17 negotiate a license agreement through Mr. Divjot "Sunny" Narang, Teilhard's investment banker.
18 Narang alleged that Oracle was infringing on the '662 patent and gave Oracle an analysis purporting
19 to show the alleged infringement. The negotiations halted when Narang requested $1 - $2 billion for
20 a license.

21 Despite the fact that none of the communications from Fewer explicitly purported to be an
22 official communication from any of the defendants, Oracle filed suit against defendants on April 27,
23 2006. The complaint asserts that Fewer's communications with Oracle "created a reasonable
24 apprehension that Teilhard will initiate a patent infringement suit against Oracle alleging that Oracle
25 infringes the '662 patent." Compl. ¶ 13.

26 On August 11, 2006, Teilhard filed a motion to dismiss, claiming that the Court lacks subject
27 matter jurisdiction over this action because Oracle's apprehension of suit was not reasonable. Teilhard
28 also claimed that the Court lacks personal jurisdiction over each defendant.

2

Oracle subsequently filed a motion seeking jurisdictional discovery. On September 6, 2006, the Court entered an order bifurcating the motion to dismiss, such that the issue of subject matter jurisdiction dispute would be resolved prior to hearing the issue of personal jurisdiction. The Court denied Oracle's request for discovery on subject matter jurisdiction, but granted Oracle limited discovery on personal jurisdiction to be conducted if and after the Court denied dismissal based on subject matter jurisdiction.

Teilhard now moves to dismiss the claim based on lack of subject matter jurisdiction.

## LEGAL STANDARD

A plaintiff bears the burden of establishing subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104 (1998) ("[T]he party invoking federal jurisdiction bears the burden of establishing its existence.") In patent cases, Federal Circuit law applies to determinations of "[w]hether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity." *Medimmune, Inc. v. Centocor*, 409 F.3d 1376, 1378 (Fed. Cir. 2005). Subject matter jurisdiction exists if the defendant could have brought a declaratory relief action when the complaint was filed. *See Household Bank v. JFS Group*, 320 F.3d 1249, 1256 (11th Cir. 2003).

To establish subject matter jurisdiction in a declaratory judgment action, a plaintiff must show "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which would constitute infringement or concrete steps taken with the intent to conduct such activity."[1] *BP Chemicals*, 4 F.3d at 978. The reasonableness of a party's apprehension is adjudged using an objective standard. *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992). Additionally, "an examination of the totality of the circumstances must be made to determine whether there is a controversy . . . " *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 880 (Fed. Cir. 1983).

---

[1] The second prong is not contested.

3

**DISCUSSION**

Teilhard argues that the case should be dismissed because Oracle could not have reasonably believed that Fewer was acting on its behalf and Oracle was not otherwise under an objective "reasonable apprehension" of imminent suit.

**1.    Authority of Fewer**

As an initial matter, Teilhard argues that Oracle could not have reasonably believed that Fewer was a representative of Teilhard because appearance of "authority must be established through the acts or declarations of the principal and not the acts or declarations of the agent." *American Cas. Co. v. Krieger*, 181 F.3d 1113, 1121 (9th Cir. 1999). *American* dealt with whether an independent insurance broker could be considered the ostensible agent of an insurance company, thereby binding the insurance company to policies issued without actual authority by the independent broker. *American* has no bearing on whether the appearance of an agency relationship can create a "reasonable apprehension" of suit for the purpose of bringing an action for declaratory judgment in a patent infringement suit.

Teilhard also relies on *West Interactive Corp. v. First Date Resources, Inc.*, 972 F.2d 1295, 1297 (Fed. Cir. 1992), for the proposition that unilateral communications made by an individual with no authority to act on behalf of the patentee cannot be used to allege a reasonable apprehension of suit. However, in that case neither the plaintiff nor defendant was at the meeting that resulted in the apprehension of suit. The inventor of the patent contacted one of the plaintiff's customers and informed the customer that the plaintiff and the customer were infringing on the patent. The customer subsequently related this allegation to the plaintiff who filed suit. The court held that the fear of suit was unreasonable because the inventor was not an owner, officer, agent, or employee of the defendant and there was no direct contact between plaintiff and defendant. In the instant action, Fewer directly brought the material to Oracle and he appeared to be a representative of Teilhard.

Teilhard also argues that it was unreasonable to assume that Fewer was acting on its behalf because Fewer never claimed that he worked for Teilhard. In 2004-2005, Mr. Narang, who was Teilhard's investment banker, discussed with Oracle a possible licensing agreement. Allegedly Narang clearly identified himself as a representative of Teilhard during the negotiations. In contrast, Fewer

4

never stated he was working for Teilhard. Furthermore, the email communications from Fewer to Oracle showed that he worked for Katz Group, a drug company, as the Director of Loss Prevention.

Teilhard also contends the information in the binder establishes that Fewer was not a representative of Teilhard and this information was non-threatening. The letter from Fewer to the CEO of Oracle contains statements such as "I felt an obligation to bring a very important matter to your personal attention," and Mr. Prather would like to explore "a relationship of mutual benefit." Kennedy Decl., Exh. C.

Oracle responds that it was reasonable to assume Fewer was acting on Teilhard's behalf because Teilhard had used a middleman in its past negotiations for a license agreement. Oracle claims it assumed that Fewer was continuing with the negotiations where Narang left off.

Oracle further argues that the materials contained in the binder reasonably led it to believe that the binder came from Teilhard. The letter enclosed in the binder stated that the package was "provided by Teilhard Technologies" and included an allegation of infringement: "Apparently, Oracle is one of the several companies that are in violation of Teilhard's patent." Kennedy Decl., Exh. C. It also included copies of business cards of Mr. Prather and Mr. Kaye (Vice President of Shopplex.com), a set of instructions to Fewer, an infringement analysis mapping out Teilhard's claim against Oracle, and a draft document related to a patent infringement suit against DataMirror over the Canadian counterpart of the '662 patent. *Id.* Oracle argues that it was reasonable to infer that it came from Teilhard because the person who put the binder together would have to have had intimate knowledge of the company. For example, the instructions in the binder to Fewer state, "within the next 10 days the company CEO will be meeting with a Patent Law Enforcement Corp in New York." *Id.* Additionally, Oracle's Chief Patent Counsel concluded that the analysis in the binder mapping out Oracle's infringement on the '662 patent was substantively identical to the analysis Teilhard provided to Oracle in 2004 through Narang.

Given the totality of the circumstances, the Court finds that it was reasonable for Oracle to conclude that Fewer was acting on Teilhard's behalf. The binder contained information that would lead a reasonable person to believe it was coming from Teilhard: it contained virtually the same patent infringement analysis that Narang once gave Oracle, business cards from Teilhard executives, and an

5

1  outline of Teilhard's similar case against DataMirror. Furthermore, the cover letter from Fewer to the
2  CEO of Oracle lends strong support to the reasonableness of Oracle's assumption that Fewer was acting
3  on Teilhard's behalf. The fact that it stated, "provided by Teilhard Technologies" and "apparently
4  Oracle is one of the several companies who is infringing on the '662 patent" would lead a reasonable
5  person to conclude Fewer was acting on Teilhard's behalf. Additionally, the letter's statement that
6  Fewer was contacted by Teilhard regarding the matter also supports the assumption that the binder was
7  sent by Teilhard.

### 2. **Apprehension of imminent suit**

Teilhard argues that Oracle did not have a "reasonable apprehension" of suit because in the license agreement negotiations with Narang, Teilhard consistently expressed its desire to engage in amicable discussions and to enter into a license agreement. Teilhard argues that the communications through Narang were not objectively threatening, citing the case *Drew Chemical Co. v. Hercules Inc.*, 407 F.2d 360, 362 (2nd Cir. 1968). In *Drew Chemical* the defendant made representations that the plaintiff was infringing on its patent. Plaintiff and defendant met to discuss a possible licensing agreement and the defendant began testing plaintiff's product to see if it infringed on the patent. Before the test was complete, the plaintiff filed suit. The defendant completed the test and concluded that plaintiff was not violating its patent and notified plaintiff of this in writing. However, the plaintiff continued with the suit and the court held that the hints of infringement were business arguments and not an actual threat to sue. Furthermore, there was no controversy since plaintiff was not infringing on the patent. In the instant action, although the prior negotiations may not have been overtly threatening, Fewer clearly stated that Teilhard would file suit on April 28th and Teilhard still alleges that plaintiff is infringing on its patent. Therefore, *Drew Chemical* is distinguishable.[2]

Teilhard also argues that even if there was a mistaken apprehension of suit in 2004-2005, any apprehension was dissipated with the passage of time. *See Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d

---

[2] Additionally, *Solenoid Devices, Inc. v. Ledex, Inc.,* 375 F.2d 444, 445 (9th Cir. 1967) is not on point because in *Solenoid* there was no actual threat of suit whereas here, there was an actual threat of suit through Fewer's email on April 26, 2006.

6

1479, 1485 (Fed. Cir. 1998). However, although there was a passage of time between the Narang negotiations and the filing of this suit, the binder sparked Oracle's reasonable apprehension of suit.

Oracle counters that the follow up emails by Fewer further demonstrate that it had a "reasonable apprehension" of suit. The April 20th email stated, "[a]s an fyi, I learned that legal action will begin in the US on April 28th regarding the patent infringement allegations against Oracle, Microsoft, and SAP." Kennedy Decl., Exh. D. Fewer additionally stated, "I was advised by Teilhard's corporate security director, that Ken Prather, CEO of Teilhard, will take any calls from Oracle up to the 28th and then he is leaving the matter to the patent infringement firm out of NYC to proceed." *Id.*

The Court concludes Oracle had an objectively "reasonable apprehension" of suit based on the totality of the forgoing circumstances. Fewer appeared to be working for Teilhard and the binder contained specific allegations of infringement. Furthermore, the two emails that Fewer sent to Oracle stated that legal action would take place on April 28, 2006. Oracle had every reason to believe it would be sued for patent infringement considering these circumstances and the failed prior negotiations.

### 3.  Discretion

District courts have discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdiction. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). The Court is not persuaded by Teilhard's argument that it should decline to exercise jurisdiction because licensing negotiations are ongoing. Nothing in the parties' filings suggest that such negotiations have continued, and no evidence supports Teilhard's claim that the action taken by Oracle was a tactical maneuver.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendants' motion to dismiss for lack of subject matter jurisdiction. (Docket No. 21). The limited discovery outlined in this Court's September 6, 2006 Order may proceed.

**IT IS SO ORDERED.**

Dated: September 29, 2006

*Susan Illston*

1
2      SUSAN ILLSTON
       United States District Judge
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28